UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Joseph Jackson,

Plaintiff,

**CIVIL ACTION NO.**
**6:18-cv-06238-EAW**

v.

**FIRST AMENDED COMPLAINT**
**FOR DAMAGES AND INJUNCTIVE**
**AND DECLARATORY RELIEF**

Tryon Park Apartments, Inc.,
and Rochester Management Inc.,

Defendants

## I.      PRELIMINARY STATEMENT

1. This is an action for monetary damages, injunctive relief and declaratory relief brought by

Plaintiff, Joseph Jackson.  Mr. Jackson alleges that he was discriminated against in the rental of

housing on the basis of race and color, in violation of the Fair Housing Act, Title VIII of the Civil

Rights Act of 1968, as amended, <u>42 U.S.C. §§ 3601 et seq.,</u> and  New York State Law,

Executive Law 296(5).

2. Specifically, Mr. Jackson alleges the policies and practices at Tryon Estates, managed by

Rochester Management Company, have a disparate impact on applicants for housing, on the

basis of race and color, pursuant to the complex's ban on eligibility for individuals with a felony

conviction.

3. When Mr. Jackson applied for an apartment at Tryon Estates, defendants maintained a policy

that automatically excluded a person with a felony conviction  from living and renting at that

apartment complex.  Because of this policy Mr. Jackson was automatically denied housing

there.

4. With its origins in employment discrimination cases, the theory of disparate impact is

recognized under the Fair Housing Act in housing discrimination cases. *See* <u>Texas Dept. of</u>

<u>Housing and Community Affairs v. Inclusive Communities Project, Inc.</u>, 135 S.Ct. 2507 (2015).

5. Known as "discriminatory effects" liability, the theory of disparate impact holds that a facially neutral practice or procedure by a housing provider may be discriminatory if it has a disproportionately negative impact on members of a protected class.

6. To establish liability, once a prima facie case is proven, in that a practice results in, or would predictably result in, a discriminatory effect, then the respondent/defendant is required to prove the practice is necessary for achieving its "substantial, legitimate, nondiscriminatory interests." Thereafter, the plaintiff can then prove the "interest" could be served through a practice with a less discriminatory effect. 24 C.F.R. section 100.500 (2013).

## II. JURISDICTION AND VENUE

7. Jurisdiction is conferred on this Court by 42 U.S.C. § 3613 and by 28 U.S.C. §§ 1331, 1343 and 2201.

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) in that the claim arose in this judicial district, and the defendants conduct business in Rochester, New York.

## III. PARTIES

9.   Mr. Jackson is an adult black male who lives, and who has at all times relevant to this lawsuit lived, in Monroe County New York.

10. Mr. Jackson is an individual with a single criminal conviction from 2006, who sought to rent property at Tryon Estates and who has been, and continues to be, adversely affected by the policies, practices and acts of the defendants and/or its agents.

11. Mr. Jackson was gainfully employed at the time relevant to this lawsuit, working a full time job at Rochester Central School District as a head custodian as well as working a part-time position at Walmart.  Mr. Jackson has a young son who was 7 years old at the time relevant to this lawsuit.

12. Tryon Park Apartments, Inc. is the owner of Tryon Estates with a property address of 100-110 Coleridge Road in Rochester New York 14609.  Upon information and belief Tyron Estates is a New York State regulated property.

13. Rochester Management Inc. manages Tryon Estates and is located at 249 Norton Village Lane in Rochester New York 14609.

## VI.THE LAW

14.    The Federal Fair Housing Act, as amended, makes it unlawful to discriminate in the provision of housing because of race, color, religion, sex, family status, or national origin 42 U.S.C. Section 3604(a).

15.    Under New York State Law, Executive Law 296(5) it is unlawful to discriminate in the provision of housing based on, among other reasons, a person's race or color.

16.    Under the law, such discrimination in housing need not to be intentional.  As stated in 24 C.F.R. section 100.500, **"**Liability may be established under the Fair Housing Act based on a practice's discriminatory effect,...even if the practice was not motivated by a discriminatory intent."  Subsection (a) defines a practice as having a discriminatory effect "where it actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of race, color, religion, sex, handicap, familial status, or national origin."

17. Such practices may still be lawful if "supported by a legally sufficient justification" meaning such practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests of the respondent, and where such interests could not be served by another practice that has a less discriminatory effect. 24 C.F.R. section 100.500 (a) and (b).

**V. FACTS**

18. In March 2016, Mr. Jackson was seeking permanent housing for himself.  Mr. Jackson was staying with family members and friends while looking for suitable housing.

19. In March 2016, Mr. Jackson's priority was to secure housing to have consistent visitation with his young son.  Without independent housing, Mr. Jackson was unable to have weekend/overnight visitation and only shared time with his son one day per week at the home of a relative, pursuant to a Livingston County court order.

20.  On or about March 24, 2016, Mr. Jackson went to Tryon Estates where he completed and submitted a rental application to rent a two (2) bedroom townhouse at the complex for $800 per month.

21. Based on Mr. Jackson's income, he was eligible for, and could afford to rent the two bedroom townhouse. Mr. Jackson met the eligibility requirement to rent the unit, had no prior evictions and did not have a bad credit history at the time that he submitted his rental application to Tryon Estates.

22. Mr. Jackson was eager to rent the two bedroom townhouse at Tryon Estates because of the spaciousness of the unit, the available facilities/amenities, its affordability, and the desirable location of the unit, especially to local parks to play with his young son.

23.  Mr. Jackson followed up on his application and spoke with an individual at Tryon Estates, an unidentified Rochester Management agent, on or about March 27, 2016, who explained that he was denied housing at Tryon Estates.  The individual did not explain, and told Mr. Jackson he needed to wait for written correspondence about the denial.

24.  On or about April 1, 2016, Plaintiff received a letter dated March 31, 2016, from Irene S. Schueler, the Manager of Operations of Rochester Management Inc. and/or Tryon Estates.

25. The denial letter from Ms. Schueler explained that Mr. Jackson's "...file was submitted to our Tenant Selection Committee" and that Mr. Jackson's "application has not been approved due to

a felony" on Mr. Jackson's criminal history.  The letter stated that Mr. Jackson could contact the office receptionist with questions or to make an appointment for a personal interview.

26. On or about April 1, 2016, Mr. Jackson called the office of Tryon Estates and requested an appeal of his housing denial. Mr. Jackson was told during that conversation that the matter would be looked into, and he would receive a return call.

27. On or about April 4, 2016, Mr. Jackson again called the office of Tryon Estates to request an appeal of his housing denial due to his past felony.  Mr. Jackson was never granted an appeal and he was informed that no one would meet with him regarding his denial.

28.  Mr. Jackson was frustrated and felt rejected after defendants denied his application.

29. Based upon information and belief, Tryon Estates' tenant selection plan, at the time of Mr. Jackson's application, automatically barred admission to any household member with a felony conviction.

### VI. THE DENIAL OF HOUSING BASED ON PAST CRIMINAL ACTIVITY BY THE DEFENDANTS CONSTITUTES UNLAWFUL DISCRIMINATION

30. The Fair Housing Act prohibits facially neutral housing practices that have a disparate impact on the basis of race or color, unless those practices have a legitimate business purpose which cannot be served through a practice having a less discriminatory impact.

31. In this case, Tryon Park Estates and its manager, Rochester Management, Inc. denied Joseph Jackson, outright, based on his prior felony conviction.  This was clearly stated in Irene S. Schueler's denial letter, dated March 31, 2016.

32.  Empirical evidence shows that nationally, and in New York State, blanket bans on eligibility, based on criminal history, result in the denial of housing opportunities at a disproportionate rate for African Americans and minorities.

33.  The disparate impact theory in housing parallels employment hiring policies and practices under Title VII of the Civil Rights Act of 1964, and its prohibition of employment discrimination based on race, color, religion, sex, and national origin.

5

34. The Equal Employment Opportunity Commission has concluded that blanket criminal history bans on employment have a disparate impact on African Americans, and issued its best practices for employers.[1]

35. According to the EEOC Guidance, nationally, in 2010, 28% of all arrests were of African Americans even though only 14% of the general population was African American. In 2001, the U.S. Department of Justice estimated that, during the lifetime for African American men, the rate of expected incarceration is 1 in 3 (32%), Hispanic men are expected to be incarcerated at a rate of 1 in 6 (17.2%), and White men are expected to go to prison at some point in their lifetime at a rate of 1 of every 17 (5.9%).

36. In April, 2016, the U.S Department of Housing and Urban Development (HUD), issued Guidance that specifically addressed how the Fair Housing Act applied when a housing provider denies an application based on an individual's criminal record.[2]

37. HUD's Guidance concluded that a housing provider can violate the Fair Housing Act when a criminal-based restriction, without justification, burdens renters or housing participants of one race or national origin over those members of another race or national origin.

38. In reaching this conclusion, HUD's Guidance considered that African Americans are arrested, convicted and incarcerated at rates disproportionate to their share of the general population. The HUD Guidance noted, for instance, that in 2013, African Americans were arrested at a rate more than double their proportion of the general population, while in 2014, African Americans accounted for approximately 36% of the national prison population, but only 12% of the nation's total population.

---

[1] U.S. Equal Emp't Opportunity Commission, EEOC Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. section 2000e et seq, No. 915.002 (April 25, 2012) (hereinafter EEOC Guidance).
[2] HUD, Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions (April 4, 2016) (hereinafter HUD Guidance).

39.  Immediately following the issuance of HUD's Guidance, on April 20, 2016, Robert Damico, the New York State Director of the Office of Housing Management issued a Memorandum.  In addition to summarizing the recently released Guidance by HUD, the Memorandum noted that the Governor had accepted recommendations from the NYS Council on Community Re-Entry and Reintegration which he had created in July 2014.

40.  It specifically states that a state regulated housing company must engage in individualized screening for ex-offenders.  It states that when screening applicants with criminal convictions, factors need to be looked at such as the seriousness of the crime, the time since the offense occurred, the applicant's age at the time of the offense, the applicant's proof of rehabilitation, and whether the applicant is a danger to other individuals.

41.  In New York State, the numbers and demographic information regarding inmates admitted to state correctional facilities, and those released from incarceration each year are  indicative of the disparity of people impacted by  bans in housing based on prior criminal history, similar to the one imposed by Defendants.

42.  During calendar year 2013, when looking at offenders admitted into a New York State correctional facility, for the first time, statistics show that 43.4% were African Americans, while 27.9% were White. State of New York, Dep't of Corrections & Cmty. Supervision, Statistical Overview for Year 2013 Court Commitments.

43.  For calendar year 2015, of the total number of inmates released from prison into the community for the first time on their current sentence, 43.8% were African American and 28% were White. State of New York, Dep't of Corrections & Cmty. Supervision, Releases and Discharges from Incarceration Report, Calendar Year 2015.

44.  As is the case with Plaintiff Joseph Jackson, because so many African Americans are disproportionately arrested, convicted and incarcerated, imposing barriers on individuals with a criminal history produces disparities in applicants eligible to rent available housing.  African

7

Americans, including Joseph Jackson, are negatively impacted because of this blanket ban of anyone with a felony conviction policy that was used by Defendants.

45. Although Defendants may assert that banning applicants with past felony convictions furthers a legitimate business purpose of establishing and maintaining the safety of rental premises, there is a less restrictive and less discriminatory practice that can be put in place to achieve that purpose.

46. The less restrictive and less discriminatory practice is for Defendants to complete an individualized assessment of every applicant having a history of prior criminal activity. A policy with procedures should be established wherein the individualized screening assessment should explore the seriousness of the past crime, the time since the offense occurred, the applicant's age at the time of the offense, the applicant's proof of rehabilitation, and whether the applicant is a danger others.

47. Such a less restrictive and less discriminatory practice has been spelled out by the U.S. Department of Housing and Urban Development, the Equal Employment Opportunity Commission, the Division of Housing and Community Renewal, and a Memorandum issued by Robert Damico.

48. Defendants chose not to engage in an individualized assessment of Joseph Jackson, which was a violation of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968 and New York Executive Law, due to the disparate impact upon Plaintiff who is African American.

49. Had the Defendants engaged in an individualized assessment of Mr. Jackson's application pursuant to the guidance issued by HUD and DHCR he would have been approved for residency at Tyron Park Apartments as he was not and is not a danger to other people or property.

## V. FIRST CAUSE OF ACTION

Defendants denial of housing to Joseph Jackson violated the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601 et seq. in that:

a.      Defendants' policy of automatically barring anyone with a felony conviction from their housing made housing unavailable because of race or color in violation of 42 USC 3604 (a) because Defendants' acts, policies and practices have an adverse and disproportionate impact on minorities and African Americans compared to similarly situated Whites.

b.      Defendants' failure to conduct an individualized assessment, on a case by case basis, for individuals with a criminal history, has a negative, disparate impact on African-Americans. This policy is not necessary to serve any substantial legitimate, nondiscriminatory interest, and any such interest could have been served by conducting an individualized consideration, having a less discriminatory effect.

## VI. SECOND CAUSE OF ACTION

Defendants' denial of housing to Joseph Jackson violated N.Y. Exec. Law section 296(5) in that:

a.      Defendants' policy of automatically barring anyone with a felony conviction from their housing makes housing unavailable because of race or color in violation of N.Y. Exec. Law section 296(5) because Defendants' acts, policies and practices have an adverse and disproportionate impact on minorities and African Americans compared to similarly situated Whites.

b.      Defendants' failure to conduct an individualized assessment, on a case by case basis, for individuals with a criminal history, has a negative, disparate impact on African-Americans. This policy is not necessary to serve any substantial legitimate, nondiscriminatory interest, and any such interest could be served by conducting an individualized consideration, having a less discriminatory effect.

WHEREFORE, Plaintiff respectfully requests that this court:

1. Assume jurisdiction of this action; and

2. Declare the defendant's actions complained herein to be in violation of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. Section 3601, et seq.; and

3. Declare the defendant's actions complained of herein to be in violation of New York Executive Law section 296(5); and

4. Order defendants to take appropriate affirmative action to insure that the activities and practices complained of are not engaged in again by them or any of their agents; and

5. Permanently enjoin defendants, their agents, employees and successors from discriminating on the basis of race and/or color against any person in violation of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended; and

6. Award appropriate punitive and compensatory damages to plaintiff and against defendants, jointly and severally; and

7. Award plaintiff's attorney's fees and costs pursuant to 42 U.S.C. Section 3613 c (2); and

8. Provide such other and further relief as this court deems just and proper.

## VI. DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury on all issues.

Dated:  June 4, 2018

Respectfully submitted,

Legal Assistance of Western New York

Laurie M. Lambrix, Esq.

Attorneys for Plaintiff

1 W. Main Street, Suite 400

Rochester, New York 14614

Telephone: (585) 325-2520

llambrix@lawny.org