UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSEPH JACKSON,

               Plaintiff,

v.

TRYON PARK APARTMENTS, INC. and
ROCHESTER MANAGEMENT INC.,

               Defendants.
_____

**DECISION AND ORDER**

6:18-CV-06238 EAW

## INTRODUCTION

Plaintiff Joseph Jackson ("Plaintiff") brings this action pursuant to the Fair Housing Act ("FHA"), Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601 *et seq.*, and New York Executive Law ("N.Y. Exec. Law") § 296(5), against defendants Tryon Park Apartments Inc. ("Tryon Park") and Rochester Management Inc. ("Rochester Management") (collectively "Defendants"). Specifically, Plaintiff claims that he was discriminated against on the basis of race and color when Defendants denied his rental application, and that Defendants' policy and practice of automatically excluding a person with a felony conviction from renting an apartment had a racially disparate impact on Plaintiff. (Dkt. 6 at ¶¶ 2-3).

Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 8). For the following reasons, Defendants' motion is denied.

## BACKGROUND

The following facts are taken from the Amended Complaint and supporting documents. As required on a motion to dismiss, the Court treats Plaintiff's factual allegations as true.

### I. Agency Recognition of Disparate Impact Claims Under the FHA

The United States Department of Housing and Urban Development ("HUD") promulgated a regulation on March 18, 2013, establishing liability under the FHA for disparate impact claims based on "race, color, religion, sex, handicap, familial status, or national origin." 24 C.F.R. § 100.500. On June 25, 2015, the United States Supreme Court issued a decision upholding this regulation in *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015), holding "that disparate-impact claims are cognizable under the Fair Housing Act." *Id.* at 2525. On April 4, 2016, HUD issued a document titled "Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions" (the "HUD Guidance Document"). (Dkt. 8-2 at 5). The HUD Guidance Document "addresses how the discriminatory effects and disparate treatment methods of proof apply in Fair Housing Act cases in which a housing provider justifies an adverse housing action—such as a refusal to rent or renew a lease—based on an individual's criminal history." (*Id.*).

After HUD's guidance document was issued, on April 20, 2016, the director of the Office of Housing Management for the New York State Division of Homes and Community Renewal ("DHCR") issued an opinion letter titled "Office of Housing

Management Memorandum #2016-B-04" (the "April 20 DHCR Opinion Letter"). (*Id.* at 16). The DHCR Opinion Letter discusses how "some housing companies, by creating a rule that ex-offenders are not under any circumstances eligible for admission, are in effect not undertaking the kind of individualized screening contemplated by DHCR regulations." (*Id.*). It further instructs housing companies that screen residents with criminal convictions to "make an individualized assessment of each applicant" and states "[t]he housing company may not reject an applicant based solely on the fact that a household member has such a [conviction]." (*Id.* at 16-17). On August 8, 2016, the director of DHCR issued a follow-up opinion letter titled "Office of Housing Management Memorandum #2016-B-05" (the "August 8 DHCR Opinion Letter"). (*Id.* at 19). The August 8 DHCR Opinion Letter states that "effective April 20, 2016, New York State's rules regarding tenant selection policies for people with criminal histories were modified," and refers those looking for the new DHCR "rules" to the April 20 DHCR Opinion Letter. (*Id.*). An Acknowledgement of Compliance was attached to the August 8 DHCR Opinion Letter, which asked staff members who engage in the tenant selection process for state-funded housing to confirm that they "understand [their] obligations pursuant to [DHCR]'s re-entry policy and procedures." (*Id.* at 20). The staff members were instructed to return the Acknowledgement of Compliance by September 7, 2016. (*Id.*).

II. <u>**Housing Application**</u>

Plaintiff is an "adult black male" who has a felony conviction. (Dkt. 6 at ¶ 9). On or about March 24, 2016, Plaintiff submitted a rental application to Tryon Estates, which is owned by Tryon Park and managed by Rochester Management. (*Id.* at ¶¶ 12-13, 20).

At the time Plaintiff submitted his application, he met the income eligibility requirement for the unit he applied for, had no prior evictions, and did not have a bad credit history. (*Id.* at ¶ 21). Plaintiff contacted an individual at Rochester Management on March 27, 2016, to follow up on his rental application. (*Id.* at ¶ 23). That individual informed Plaintiff that his application had been denied. (*Id.*).

On or about April 1, 2016, Plaintiff received a letter dated March 31, 2016, from Irene S. Schueler, the Manager of Operations of Rochester Management. (*Id.* at ¶ 24). The letter explained that the tenant selection committee had not approved Plaintiff's application "due to a felony" on Plaintiff's criminal record, and that Plaintiff could contact the office receptionist with questions or make an appointment for a personal interview. (*Id.* at ¶ 25). Plaintiff called Defendants' office that day and requested an appeal of the denial of his application. (*Id.* at ¶ 26). During the conversation, Plaintiff was told that the matter would be looked into and that he would receive a return call. (*Id.*). Plaintiff again called Defendants' office on April 4, 2016, to request an appeal; however, Plaintiff was never granted an appeal and was informed that no one would meet with him regarding the denial of his application. (*Id.* at ¶ 27).

Plaintiff filed the instant lawsuit on March 22, 2018 (Dkt. 1), amending his Complaint on June 4, 2018 (Dkt. 6). Defendants filed their motion to dismiss and supporting documents on June 28, 2018. (Dkt. 8). Plaintiff filed his opposition to the motion to dismiss on July 19, 2018 (Dkt. 12; Dkt. 13), and Defendants submitted their reply on July 26, 2018 (Dkt. 14). Oral argument was heard before the undersigned on January 11, 2019. (Dkt. 16).

# DISCUSSION

## I. <u>Legal Standard</u>

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen*

*v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II. <u>FHA Claim</u>

Defendants argue that they did not violate the FHA because the HUD Guidance Document was not issued until April 4, 2016, and therefore the law changed after the denial of Plaintiff's rental application. (Dkt. 14 at 7-8). The Court finds Defendants' argument unpersuasive.

Section 804(a) of the FHA makes it unlawful "[t]o refuse to sell or rent . . . or otherwise make unavailable or deny, a dwelling to any person because of race, color, . . . or national origin." 42 U.S.C. § 3604(a). "[D]isparate-impact claims are cognizable under the Fair Housing Act. . . ." *Inclusive Communities Project*, 135 S. Ct. at 2525; 24 C.F.R. § 100.500 ("Liability may be established under the Fair Housing Act based on a practice's discriminatory effect . . . even if the practice was not motivated by a discriminatory intent."); *see Anderson Group, LLC v. City of Saratoga Springs*, 805 F.3d 34, 49 (2d Cir. 2015) ("[W]e recognize[] that an FHA violation could be established through a showing that a facially neutral rule or policy had a discriminatory effect on a protected class."). To establish a *prima facie* case of disparate impact, the plaintiff must allege "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Mhany Management, Inc. v. County of Nassau*, 819 F.3d 581, 617 (2d Cir. 2016) (quotation omitted). "[A] disparate-impact claim that relies on a

statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." *Inclusive Communities Project*, 135 S. Ct. at 2523.

Plaintiff's Amended Complaint sufficiently alleges a disparate impact claim under the FHA. Plaintiff alleges that Defendants have an outwardly neutral practice, i.e., "automatically exclud[ing] a person with a felony conviction from living and renting at [Defendants'] apartment complex." (Dkt. 6 at ¶ 3). Plaintiff also alleges that "the policies and practices [of Defendants] have a disparate impact on applicants for housing, on the basis of race and color" (*id.* at ¶ 2), because "[e]mpirical evidence shows that nationally, and in New York State, blanket bans on eligibility, based on criminal history, result in the denial of housing opportunities at a disproportionate rate for African Americans and minorities" (*id.* at ¶ 32). Because the statistical racial disparity that Plaintiff relies on is directly related to Defendants' policy of excluding a person with a felony conviction from renting at Defendants' property, Plaintiff has plausibly alleged a disparate impact claim under the FHA. *See Meyer v. Bear Road Assoc.*, 124 F. App'x 686, 689 (2d Cir. 2005) (holding the plaintiffs properly established a claim of disparate impact because the complaint alleged that defendants' rental pricing policy led to under-representation of families with children); *Gashi v. Grubb & Ellis Prop. Mgmt. Servs., Inc.*, No. 3:09-CV-1037 (JCH), 2010 WL 2977143, at *1 (D. Conn. July 21, 2010) (holding the plaintiffs had properly established a *prima facie* case of disparate impact because they alleged that defendants' policy had a disproportionate impact on families with children); *see also Sams v. Ga West Gate, LLC*, No. CV 415-282, 2017 WL 436281, at *5 (S.D. Ga. Jan. 30, 2017) (holding the plaintiffs had properly alleged a disparate impact claim against the defendants'

criminal history policy which barred from residency individuals with criminal convictions); *Alexander v. Edgewood Mgmt. Corp.*, No. 15-01140 (RCL), 2016 WL 5957673, at *2-3 (D.D.C. July 25, 2016) (holding the plaintiff alleged a valid disparate impact claim because he alleged that the defendants' policy of rejecting rental applicants based on their criminal history had a disparate impact on a protected class).

Defendants argue that dismissal is mandated as a matter of law because Plaintiff's housing application was denied on March 31, 2016, before the HUD Guidance Document was issued on April 4, 2016.[1] (Dkt. 14 at 7). Therefore, Defendants argue, "housing providers such as Defendants were not required to conduct an individualized assessment of applicants with criminal records until April 2016." (*Id.* at 8).

When Congress has "explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984). "[A]ny ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute," as long as the agency's exercise of authority is constitutional. *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001). However, "agencies charged with applying a statute necessarily make all sorts of interpretive choices," not all of which are legally binding. *Id.*

---

[1] Defendants also argue that the Amended Complaint relies on the HUD Guidance Document to support Plaintiff's claims. (Dkt. 14 at 5-7). While the Amended Complaint references the HUD Guidance Document (Dkt. 6 at ¶¶ 36-40, 47), the cause of action alleged by Plaintiff under federal law is based on the FHA, not the HUD Guidance Document. (Dkt. 6 at 9).

"The Administrative Procedure Act (APA) establishes the procedures federal administrative agencies use for 'rule making,' defined as the process of 'formulating, amending, or repealing a rule.'" *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1200 (2015) (quoting 5 U.S.C. § 551(5)). One type of rule, a legislative rule, is issued through notice-and-comment rulemaking, *see* 5 U.S.C. §§ 553(b)-(c), and has the "force and effect of law," *Chrysler Corp. v. Brown*, 441 U.S. 281, 302-03 (1979). The second kind, an interpretive rule, "do[es] not require notice-and-comment rulemaking," is "issued . . . to advise the public of the agency's construction of the statutes and rules which it administers," and "do[es] not have the force and effect of law." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995). "In this [C]ircuit, we have stated that legislative rules are those that create new law, right[s], or duties, in what amounts to a legislative act. Interpretive rules, on the other hand, do not create rights, but merely clarify an existing statute or regulation." *N.Y.S. Elec. & Gas Corp. v. Saranac Power Partners, L.P.*, 267 F.3d 128, 131 (2d Cir. 2001).

Defendants assume, without any justification, that the HUD Guidance Document is a legislative rule. To the contrary, the Court finds that the HUD Guidance Document was at most an interpretive rule. HUD's Office of General Counsel issued the Guidance Document after promulgating a regulation in 2013, 24 C.F.R. § 100.500, and after the Supreme Court's 2015 *Inclusive Communities Project* ruling upholding that regulation. (*See* Dkt. 8-2 at 6 n.10-11). The HUD Guidance Document merely clarifies HUD's position about how 24 C.F.R § 100.500 applies to "Fair Housing Act cases in which a housing provider justifies an adverse housing action—such as a refusal to rent or renew a

lease—based on an individual's criminal history" (Dkt. 8-2 at 5); it does not have the force and effect of law itself. Additionally, the HUD Guidance Document refers to itself as just that, "guidance," numerous times throughout the document including in the title of the document itself (*id.*), and it was not promulgated via notice-and-comment rulemaking. By contrast, 24 C.F.R. § 100.500 is a regulation implemented using notice-and-comment rulemaking and was upheld by the Supreme Court, making it a legislative rule that carries the force and effect of law. This regulation allows for disparate impact claims under the FHA and was established in 2013—well before the denial of Plaintiff's rental application.

As a result, Plaintiff has alleged a valid disparate impact claim under the FHA and its regulations and dismissal is not warranted.

### III. State Law Claim

Defendants argue that they did not violate N.Y. Exec. Law § 296(5) because New York State law was not modified until the April 20 DHCR Opinion Letter and August 8 DHCR Opinion Letter were issued, and Plaintiff's rental application was denied before the issuance of those letters. (Dkt. 8-1 at 8).

N.Y. Exec. Law § 296(5) is part of the New York State Human Rights Law, which is administered by the New York State Division of Human Rights. N.Y. Exec. Law § 295; *see Versailles Realty Co. v. N.Y.S. Div. of Hous. and Cmty. Renewal*, 76 N.Y.2d 325, 328 (1990) ("[T]he Legislature may establish administrative agencies to accomplish its purposes and such agencies may be given the power to adopt rules and regulations to advance the purpose for which they were created. The regulations so adopted, if reasonable, have the force and effect of law."). The documents Defendants rely on were

issued by DHCR, an agency entirely separate from the Division of Human Rights and not vested with the power to administer the New York State Human Rights Law. DHCR is instead vested with the power to administer other statutes, such as the New York Public Housing Law. *See, e.g.*, N.Y. Pub. Hous. Law § 14 (vesting DHCR with the power to administer the N.Y. Pub. Hous. Law); *Rent Stabilization Ass'n of N.Y.C., Inc. v. Higgins*, 83 N.Y.2d 156, 165 (1993) ("The legislature in 1983 designated DHCR the sole administrative agency to administer the regulation of residential rents under the rent control and rent stabilization statutes, and in 1985 additionally granted DHCR authority to amend the Rent Stabilization Code." (quotation omitted)). Therefore, if the DHCR documents did indeed modify state law as Defendants claim, then they modified regulations issued under statutes that DHCR has the authority to administer, which do not include the basis for Plaintiff's state law claim—the New York State Human Rights Law.[2]

N.Y. Exec. Law § 296(5) has been in place since 1991, well before the alleged conduct at issue in the instant matter. 1991 N.Y. Sess. Laws Ch. 368 (McKinney). The standards relevant to Plaintiff's claims of discrimination under the NYSHRL "parallel those applicable under the FHA." *Lynn v. Village of Pomona*, 212 F. App'x 38, 40 n.2 (2d Cir. 2007); *see, e.g.*, *Okolie v. Paikoff*, 589 F. Supp. 2d 204, 221 (E.D.N.Y. 2008)

---

[2] The language in the DHCR Opinion Letters supports the conclusion that they only refer to modifications of New York state regulations for state-subsidized housing. (*See, e.g.*, Dkt. 8-2 at 16 ("In September 2015, the Governor accepted recommendations . . . one of which was the adoption of individualized guidance and review in *New York-financed housing*." (emphasis added)); *id.* at 20 ("I reviewed [DHCR]'s Guide . . . for Applying New York State's Anti-Discrimination Policies When Assessing Applicants for State-Funded Housing Who Have Criminal Convictions. . . .")).

(dismissing the plaintiff's state law claim "for the same reasons" the FHA claim was dismissed because "[c]laims of discrimination under [N.Y. Exec. Law § 296(5)] . . . are analyzed under the same framework as is used for the FHA"); *Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 588 & n.5 (S.D.N.Y. 2012) ("[N.Y. Exec. Law § 296(5)] housing discrimination claims are analyzed under the same standard as claims made under the FHA."). "We have consistently held that the standards for recovery under the New York Human Rights Law are in nearly all instances identical to . . . federal law." *Margerum v. City of Buffalo*, 24 N.Y.3d 721, 731 (2015); *see Saint-Jean v. Emigrant Mortg. Co.*, 50 F. Supp. 3d 300, 318-20 (E.D.N.Y. 2014) (holding the plaintiffs alleged viable disparate impact claims under the FHA and New York State law); *see also De La Fuente v. Sherry Netherland, Inc.*, No. 17 Civ. 4759 (PAE), 2018 WL 1597649, at *6-7 (S.D.N.Y. Mar. 27, 2018) (holding that the plaintiff adequately alleged a disparate treatment claim under the FHA and, consequently, under N.Y. Exec. Law § 296(5)).

As a result, Plaintiff has plausibly alleged a violation of the N.Y. Exec. Law § 296(5), and Defendants' motion to dismiss must be denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 8) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: January 25, 2019
  Rochester, New York